**Certiorari Denied, May 6, 2011, No. 32,951**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-071**

**Filing Date: March 16, 2011**

**Docket No. 29,382**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**RICHARD LOPEZ,**

> **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Robert E. Tangora, L.L.C
Robert E. Tangora
Albuquerque, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

**{1}** Defendant Richard Lopez appeals from the district court's order of criminal commitment, pursuant to NMSA 1978, Section 31-9-1.5(D) (1999). Defendant argues that the district court erred by (1) finding that there was sufficient evidence that Defendant inflicted great bodily harm while committing armed robbery, (2) concluding that armed

1

robbery is a crime delineated in Section 31-9-1.5(D) permitting commitment, and (3) denying Defendant presentence confinement credit for the period of detainment prior to the commitment. Because armed robbery that results in the infliction of great bodily harm on another person is a delineated crime under Section 31-9-1.5(D) and there was sufficient evidence to support the district court's finding that Defendant inflicted great bodily harm on the victim while committing armed robbery, the district court did not err by ordering Defendant's commitment for twelve years. However, because Defendant was entitled to presentence confinement credit for the period of detainment prior to the commitment in light of our opinion in *State v. Lopez*, 2009-NMCA-112, 147 N.M. 279, 219 P.3d 1288, we remand to the district court to modify the commitment period.

**BACKGROUND**

{2}     A grand jury indicted Defendant on charges of armed robbery, contrary to NMSA 1978, Section 30-16-2 (1973), aggravated burglary with a deadly weapon, contrary to NMSA 1978, Section 30-16-4(A) (1963), and aggravated battery with a deadly weapon or, alternatively, aggravated battery with great bodily harm, contrary to NMSA 1978, Section 30-3-5(A), (C) (1969). Before trial, the district court ordered a criminal commitment hearing after finding that Defendant was incompetent to proceed to trial and still dangerous, pursuant to Section 31-9-1.5(D). Section 31-9-1.5(D) permits a district court to criminally commit a defendant in a locked, secured facility for a period of time equal to the maximum sentence that could have been imposed had the defendant been convicted in a criminal proceeding. The judge must find by clear and convincing evidence that the defendant committed a crime specified in Section 31-9-1.5(D) and that the defendant is incompetent and dangerous.

{3}     Prior to the commitment hearing, the parties stipulated to facts regarding the incident forming the basis of the charges against Defendant, which we summarize as follows. Defendant was staying with his girlfriend at the Ambassador Inn (hotel). During the stay, the victim, who is a night clerk at the hotel, twice told Defendant, his girlfriend, and another individual to refrain from drinking outside their room. Both times, Defendant and his companions complied with the request. Early the next morning, Defendant approached the victim in the hotel laundry room and asked for towels. The victim turned away to get the towels, and when he turned to hand them to Defendant, Defendant struck him in the face with a closed fist. As a result, the victim fell into an industrial-sized laundry basket, and Defendant continued to strike him. The victim could not defend himself due to a congenital birth defect that does not allow him to extend his hands. Defendant then picked up a hard, plastic tube and beat the victim over the head with it until the victim "'played dead.'" Defendant took the keys to the hotel office from the victim and entered the hotel office. Police later discovered that $46.81 was missing from the cash drawer inside the office. Defendant was charged and arrested three weeks later. While being arrested, Defendant told the arresting officers that he "recalled being in an altercation with an employee," that he "received a few dollars from the [hotel's] cash drawer," and spontaneously stated that "$40 was not worth it."

2

{4}     Based on the preceding stipulated facts, the district court found, by clear and convincing evidence, that Defendant committed armed robbery that resulted in great bodily harm to the victim and both alternative counts of aggravated battery. The district court concluded that both armed robbery and aggravated battery are crimes delineated for criminal commitment pursuant to Section 31-9-1.5(D) and ordered Defendant's commitment in a locked, secure facility for three years for the aggravated battery and nine years for the armed robbery. The district court denied Defendant presentence confinement credit for the period of detainment prior to the criminal commitment.

**SUFFICIENCY OF THE EVIDENCE**

{5}     Robbery requires the intent to take something of value from another person. *See State v. Nelson*, 83 N.M. 269, 271, 490 P.2d 1242, 1244 (Ct. App. 1971) (holding that robbery includes "the concept of criminal intent"); *see also* UJI 14-1621 NMRA (including the intent to permanently deprive the victim of property as an element of armed robbery). Section 31-9-1.5(D) only permits a district court to commit a defendant upon a finding by clear and convincing evidence that the defendant committed a crime that "involves the infliction of great bodily harm on another person," and that the defendant was incompetent and dangerous. As a result, to have committed Defendant, the district court must necessarily have found that (1) Defendant inflicted great bodily harm on the victim during the commission of the armed robbery, and therefore, (2) Defendant intended to steal the property of the victim while he inflicted great bodily harm on the victim.

{6}     Defendant argues that there was insufficient evidence in the stipulated facts to support a finding that Defendant intended to commit armed robbery at the time that great bodily harm was inflicted on the victim. This Court reviews the sufficiency of the evidence for an order of commitment under Section 31-9-1.5(D) using a test that parallels the test for substantial evidence in reviewing a criminal conviction. *See State v. Taylor*, 2000-NMCA-072, ¶ 18, 129 N.M. 376, 8 P.3d 863. We determine whether there is direct or circumstantial evidence to support a verdict of guilty with respect to every element essential to conviction. *Id.* We review the evidence in the light most favorable to the prevailing party, resolving all conflicts and permissible inferences in its favor. *Id.* We will not substitute our judgment for that of the district court and only determine whether "any rational fact finder could have found . . . the essential facts required" for conviction. *State v. Adonis*, 2008-NMSC-059, ¶ 12, 145 N.M. 102, 194 P.3d 717 (emphasis, internal quotation marks, and citation omitted).

{7}     While there is no direct evidence as to the time that Defendant formed the intent to commit robbery, circumstantial evidence can be sufficient to support a finding of intent. *See State v. Durant*, 2000-NMCA-066, ¶ 15, 129 N.M. 345, 7 P.3d 495 (recognizing that "[i]ntent can rarely be proved directly and often is proved by circumstantial evidence"). The stipulated facts indicate that Defendant committed the battery on the victim and that immediately after the victim "played dead," Defendant took the keys to the hotel office. Defendant did not leave the laundry room between the battery and the taking of the keys. The stipulated facts also indicate that Defendant admitted "receiv[ing] a few dollars" from the cash drawer and that he spontaneously told the arresting officer that "$40 was not worth it." While this statement is not a direct admission, it can be interpreted as circumstantial

3

evidence that Defendant committed the battery on the victim with the intent to rob him. The close temporal proximity between the battery and the taking of the keys, along with the statement to the officer, is sufficient circumstantial evidence to support a finding that Defendant formed the intent to commit the robbery before or during the time he committed the battery on the victim.

{8} While Defendant implies in his brief in chief that he may have had other reasons for committing the battery aside from intent to commit robbery, such as that he was upset that the victim had previously told Defendant and his friends to refrain from drinking in public, we decline to disturb the judgment of the factfinder and reweigh the evidence. *See State v. Juan*, 2010-NMSC-041, ¶ 33, 148 N.M. 747, 242 P.3d 314. The factfinder is free to reject a defendant's version of events. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).

**GREAT BODILY HARM UNDER SECTION 31-9-1.5(D)**

{9} Defendant further argues that the district court erred in finding that armed robbery is a crime for which a defendant can be committed because Section 31-9-1.5(D) only permits commitment of a defendant who commits a felony containing the infliction of great bodily harm as an element necessary for conviction. Our review of Section 31-9-1.5(D) is a question of statutory interpretation that we review de novo. *See Villa v. City of Las Cruces*, 2010-NMCA-099, ¶ 12, 148 N.M. 668, 241 P.3d 1108 ("Statutory construction calls for de novo review."), *cert. denied*, 2010-NMCERT-009, 149 N.M. 49, 243 P.3d 753.

{10} In interpreting a statute, our primary objective is to give effect to the Legislature's intent. *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. In determining legislative intent, we first look to the language used and give effect to the plain meaning of that language. *Id.* Under the plain meaning rule, if the plain meaning of the statute is clear and unambiguous, we refrain from any further statutory interpretation. *State v. Rivera*, 2004-NMSC-001, ¶ 10, 134 N.M. 768, 82 P.3d 939. Moreover, when the statute at issue is complete and makes sense as written, we do not read into the statute any words that are not in the statutory language. *Burroughs v. Bd of Cnty. Comm'rs of Cnty. of Bernalillo*, 88 N.M. 303, 306, 540 P.2d 233, 236 (1975).

{11} We must determine whether the Legislature intended "a felony that *involves* the infliction of great bodily harm" in Section 31-9-1.5(D) to mean that the felony must contain infliction of great bodily harm as an element necessary for conviction. (Emphasis added.) The question hinges on the meaning the Legislature intended by the term "involves." In determining the plain meaning of statutory language, we are aided by the dictionary definition. *See Battishill v. Farmers Alliance Ins. Co.*, 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111 ("We . . . hold that the common and ordinary meaning . . . may be ascertained from a dictionary."). "Involve" is defined as "to oblige to become associated." Webster's Third New International Dictionary 1191 (Unabridged 1993). "Associated" is defined as "closely connected, joined, or united with another." *Id.* at 132. Using these definitions as a guide, the plain meaning of Section 31-9-1.5 is that it allows for confinement of defendants who commit felonies closely connected, joined, or united with the infliction of great bodily

4

harm.

**{12}** A felony can be closely connected, joined, or united with the infliction of great bodily harm even when the felony does not contain the infliction of great bodily harm as an element necessary for conviction, such as in this case in which a felony is committed in a manner that results in great bodily harm to another. To require that the infliction of great bodily harm be an element of the felony requires us to equate "involves" with a phrase such as "contains as an element." Such a reading would require this Court to add words not specifically stated in Section 31-9-1.5(D) and place a limitation not found in the text of the statute. We decline to do so. *See Burroughs*, 88 N.M. at 306, 540 P.2d at 236 (recognizing that this Court "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written"). If the Legislature had intended great bodily harm to be a necessary element of the underlying felony before criminal commitment can be imposed, the Legislature could have drafted the statute using such language. *Cf. State v. Ordunez*, 2010-NMCA-095, ¶ 8, 148 N.M. 620, 241 P.3d 621 (stating that if "the Legislature intended to extend the district court's jurisdiction beyond a defendant's probation period, it certainly could have done so"), *cert. granted*, 2010-NMCERT-010, 149 N.M. 65, 243 P.3d 1147.

**{13}** While this Court may deviate from the plain meaning of a statute when the plain meaning leads to results that are "absurd, unreasonable, or contrary to the spirit of the statute," we believe that our reading of Section 31-9-1.5 furthers the legislative purpose behind the New Mexico Mental Illness and Competency Code (NMMIC). *See Martinez v. Cornejo*, 2009-NMCA-011, ¶ 11, 146 N.M. 223, 208 P.3d 443 (internal quotation marks and citation omitted). The NMMIC provides for the "confinement of dangerous, incompetent defendants," *State v. Trujillo*, 2009-NMSC-012, ¶ 15, 146 N.M. 14, 206 P.3d 125, and thereby promotes the state's interest in protecting the community from dangerous individuals. *See State v. Rotherham*, 122 N.M. 246, 262, 923 P.2d 1131, 1147 (1996). In fulfilling this purpose, the Legislature "intended to include, not exclude, the most serious crimes involving the most dangerous defendants." *Taylor*, 2000-NMCA-072, ¶ 14. Commitment for felonies committed in a manner that results in great bodily harm to another person furthers the community protection purpose to a much greater extent than if criminal commitment were limited to only those felonies containing the infliction of great bodily harm as an element. Because the Legislature intended the delineation of crimes in Section 31-9-1.5(D) to be inclusive and because the plain meaning furthers the purpose of the NMMIC, we see no reason to deviate from the plain meaning of Section 31-9-1.5(D) and read into it a requirement that the felony must contain the infliction of great bodily harm, an element necessary for conviction in order for a court to commit a defendant.

**PRESENTENCE CONFINEMENT CREDIT**

**{14}** Defendant lastly argues that he was entitled to presentence confinement credit toward his commitment period under NMSA 1978, Section 31-20-12 (1977). Section 31-20-12 provides that a "person held in official confinement on suspicion or charges of the commission of a felony shall . . . be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense." The district court found

that Defendant was not entitled to presentence confinement credit because the district court did not convict Defendant of a criminal offense and did not impose a criminal sentence. In other words, the district court found that Section 31-20-12 does not require presentence confinement credit to apply to commitment pursuant to Section 31-9-1.5(D), because commitment under Section 31-9-1.5(D) is not a criminal conviction. However, this Court has recently determined, and the State concedes, that presentence confinement credit should be credited to criminal commitment under Section 31-9-1.5(D) to the same extent the confinement would have been credited against a sentence for a criminal conviction. *See Lopez*, 2009-NMCA-112, ¶ 10. We therefore remand to the district court to modify Defendant's commitment period for the time spent in detention prior to the commitment.

**CONCLUSION**

**{15}** Because Section 31-9-1.5(D) allows criminal commitment of a defendant who commits a felony in a manner that results in great bodily harm to another person, and the evidence was sufficient to support a finding that Defendant inflicted great bodily harm on the victim during the commission of an armed robbery, we uphold the district court's order detaining defendant for twelve years. However, because the district court erred in concluding that Defendant was not entitled to presentence confinement credit, we remand to the district court to modify Defendant's commitment period granting credit for the time spent in detention prior to commitment.

**{16}  IT IS SO ORDERED.**

---

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

---

**CELIA FOY CASTILLO, Chief Judge**

---

**LINDA M. VANZI, Judge**

**Topic Index for *State v. Lopez*, Docket No. 29,382**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-RB | Robbery |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-CM | Credit for Time Served |
| | |
| **ST** | **STATUTES** |

6

ST-IP                 Interpretation
ST-LI                 Legislative Intent